**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

OBSERVATORY PLACE LLC, A Delaware Limited Liability
Company; and ALLEN J. ANDERSON, and DANIEL P.
MCCOY, Individuals,

      Plaintiffs,

v.

INTERSTATE FIRE & CASUALTY, An Illinois Corporation,

      Defendant.

_____

**COMPLAINT**
_____

Plaintiffs Observatory Place LLC, Allen J. Anderson, and Daniel P. McCoy (collectively "Plaintiffs" or the "Observatory Parties"), through their undersigned counsel, Judy B. Snyder of Berg Hill Greenleaf & Ruscitti LLP, hereby respectfully submit their Complaint and state, aver, and allege as follows:

**PARTIES**

1.    Plaintiff Observatory Place LLC ("Observatory Place") is a Delaware Limited Liability Company authorized to do business in the State of Colorado, with an address in Colorado of P.O. Box 102244, Denver, CO 80250.

2.    Plaintiff Allen J. Anderson ("Anderson") is an individual residing at 2200 S. University Blvd., #506, Denver, CO 80210.

3. Plaintiff Daniel P. McCoy ("McCoy") is an individual residing at 2501 East Kentucky Avenue, Denver, CO 80209.

4. Upon information and belief, Defendant Interstate Fire & Casualty ("Interstate"), is one of the Fireman's Fund Insurance Companies, a Company of Allianz, and is an Illinois Corporation with a principal address of 33 W. Monroe Street, Chicago, Illinois, 60603. Interstate may be served with process via its registered agent, Division of Insurance, at 1560 Broadway, Denver, Colorado 80202.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendant, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this suit occurred within this jurisdiction and because this case arises out of an insurance contract entered into in Colorado to insure a Colorado-based project.

## GENERAL ALLEGATIONS

7. Observatory Place was the developer of the Observatory Place residential condominium project located at 2200 South University Boulevard, Denver, Colorado (the "Project").

8. On or about January 6, 2006, Observatory Place and Kim McPherson (hereinafter "Homeowner"), entered into a purchase agreement pursuant to which the Homeowner purchased Unit 414 of the Project (the "Residence") from Observatory Place.

9. On or about April 21, 2006, Observatory Place and Shaw Builders LLC ("Shaw") entered into a Construction Contract ("Contract") pursuant to which Shaw served as General Contractor on the construction of the Project.

10. As set forth in the Contract (pertinent portions of which are attached hereto as **Exhibit 1**, and incorporated by reference), Shaw agreed to defend and indemnify Observatory Place pursuant to, but not necessarily limited to, the following provision in the Contract:

> **A.  General Indemnification Obligation** – Contractor [Shaw] hereby assumes the entire responsibility and liability for any and all damages or injury of any kind or nature whatever … to all property caused by, resulting from, arising out of or occurring in connection with the execution of the Work.  Except to the extent expressly prohibited by statute, should any claims for such damage or injury … be made or asserted, Contractor agrees to indemnify and save harmless Owner [Observatory Place], Project Coordinator, Architect, Lender, their officers, agents, servants and employees, (collectively referred to hereinafter as "Indemnitees") from and against any and all such claims, and further from and against any and all loss, cost expense, liability, damage or injury, including legal fees and disbursements, that Indemnitees may directly or indirectly sustain, suffer or incur as a result thereof; and Contractor agrees to and does hereby assume, on behalf of Indemnitees, the defense of any action at law or in equity which may be brought against Indemnitees, upon or by reason of such claims and to pay on behalf of Indemnitees, upon its demand, the amount of any judgment that may be entered against Indemnitees, in any such action. …

(**Exhibit 1**, at p. 13, ¶ 11(A)).

11. On or about April 17, 2007, Interstate issued a policy (the "Policy") to Observatory Place.  The Policy is a "Wrap-Up" Policy, thereby insuring Plaintiffs Anderson and McCoy as members of Observatory Place.  *See* Policy, attached hereto as **Exhibit 2**, at page 7 of 13 (handwritten page number 24), SECTION II – WHO IS AN INSURED, 1(c).  The Policy is incorporated herein by reference.

12. Pursuant to the Named Insured Endorsement (Wrap-Up), Shaw is also an insured under the Policy.  *See* **Exhibit 2**, at page 12.

3

13. Through the Policy, Interstate is, among other things, both the intended and actual guarantor of Shaw's foregoing defense and indemnity obligations to Observatory Place. In this regard, the Contract is an "insured contract" under the Policy. *See* **Exhibit 2**, at page 47.

14. Further, via Endorsement, the Policy does not provide coverage or a duty to defend against any "property damage" at or to the project insured under this policy during the course of construction, up to the "substantial completion" of the [P]roject. As such, the Policy is what is commonly known as a completed-operations policy. *See* **Exhibit 2**, at page 11.

15. On or about May 29, 2009, the Observatory Parties and Shaw, among others, were served with a Notice of Claim by the Homeowner (the "Notice") alleging damages to the Residence related to a water intrusion event at the Project. On August 5, 2009, the Observatory Parties and Shaw, among others, were served with a Supplemental Notice of Claim related to the same events ("Supplemental Notice"). *See* Notice and Supplemental Notice, attached as **Exhibit 3**, and incorporated by this reference.

16. The Notice and Supplemental Notice alleged damages after substantial completion of the Project. As such, the Notices alleged damages during the Policy period. *Id.*

17. The Observatory Parties timely tendered defense and demanded indemnity from Interstate in connection with the Notice. *See* **Exhibit 4**.

18. The Observatory Parties also timely tendered defense and demanded indemnity from Shaw in connection with the Notice.

19. The Observatory Parties proceeded through the Notice of Claim process, and under the guidance and direction of Interstate's representatives, made expenditures in the form of

investigative and legal fees to mitigate the damage to the Project and Residence, as well as to mitigate Interstate's exposure to the Homeowner. *See, e.g.,* **Exhibits 4** and **5**.

20. Despite the Notice of Claim process being successfully completed in terms of all damage to the Project and Residence being repaired, the Homeowner filed suit (the "Complaint") in November 2009, asserting causes of action for negligent misrepresentation/nondisclosure and rescission (the "Litigation").

21. In the Complaint, the Homeowner asserted that the Observatory Parties misrepresented that: the Residence was built within the recognized standards of the industry; the Residence was constructed in a good and workmanlike manner and in accordance with sound construction practices; the Residence was constructed in compliance with all applicable codes; the Residence was fit for human habitation; the Residence was built in compliance with the plans and specifications; and the Residence was constructed with high quality. The Homeowner asserted that as a result of these alleged misrepresentations, she was entitled to damages, at law or in equity, including rescission of the purchase agreement.

22. The Homeowner's claims against the Observatory Parties for negligent misrepresentation/nondisclosure and rescission, as delineated in more detail above, alleged damage to property that was caused by, resulted from, arose out of, or occurred in connection with the work performed by Shaw under the Contract. Thus, Shaw and Interstate were required to defend the Observatory Parties against such claims.

23. The Observatory Parties timely tendered defense and demanded indemnity from Interstate in connection with the Litigation.

24. The Observatory Parties also timely tendered defense and demanded indemnity from Shaw in connection with the Litigation.

25. Interstate ultimately denied the Observatory Parties defense and indemnity in connection with the Notice of Claim process, but accepted the tender of defense in the Litigation. *See* **Exhibit 6** (December 11, 2009, Reservation of Rights letter from Interstate).

26. On or about April 15, 2010, the Observatory Parties and Shaw settled the Litigation with the Homeowner. Interstate participated in the settlement (the "Settlement"). This Settlement is confidential, and at this juncture in this action against Interstate, it is not necessary to disclose its terms.[1]

27. The Settlement was reasonable, was entered into in good faith, and was reasonably related to the Observatory Parties' liability exposure and business needs and interests.

28. Separate from, but in connection with the Settlement, the Observatory Parties and Shaw carved out and reserved their rights to pursue the pending claims as among themselves and Interstate, including, but not limited to: the Observatory Parties' claims against Interstate for the investigative and legal fees expended during the Notice of Claim process, which were incurred with the knowledge of and under the supervision of Interstate's claims' representatives; issues related to the Policy deductible (the "Deductible"); and the Observatory Parties' potential indemnity claims against Shaw.

29. The Observatory Parties have incurred damages that include, but are not necessarily limited to, the investigative and legal fees and costs incurred during the Notice of Claim process; the amount of the Observatory Parties' settlement payment to the Homeowner in

---

[1] Should it become necessary to disclose the terms of the Settlement, Plaintiffs will take the appropriate steps to facilitate this disclosure.

the Litigation; attorneys' fees and costs incurred in pursuing coverage from Interstate, which includes the attorneys' fees and costs incurred to prosecute this action; and pre- and post-judgment interest.

## FIRST CLAIM FOR RELIEF
### Breach of Insurance Contract

30. The Observatory Parties hereby incorporate all previous allegations as though fully set forth herein.

31. The Policy is a valid and binding insurance contract.

32. The Observatory Parties performed under the Policy and have met all conditions precedent with respect to providing notice, tendering defense, and demanding indemnity under the Policy.

33. None of the exclusions in the Policy apply.

34. Interstate failed to perform under the Policy in that it failed to defend and indemnify the Observatory Parties with respect to the Notice of Claim process.

35. Interstate's failure to perform under the Policy constitutes a breach of insurance contract.

36. As a result of Interstate's breach, the Observatory Parties have been damaged in an amount to be proven at trial, including, but not limited to, their attorneys' fees incurred in the Notice of Claim process as well as in pursuit and prosecution of their claims against Interstate. Plaintiffs may also be entitled to recover attorneys' fees in this case pursuant to C.R.S. § 10-3-1116(1).

## SECOND CLAIM FOR RELIEF
### Bad Faith and Willful and Wanton Breach of Insurance Contract

37. The Observatory Parties hereby incorporate all previous allegations as though fully set forth herein.

38. Interstate owes its insureds, including the Observatory Parties, a duty of good faith and fair dealing, which duty is breached if Interstate delays or denies coverage without a reasonable basis for such delay or denial.

39. Interstate has unreasonably delayed payment of benefits owed to the Plaintiffs under the Policy and has unreasonably refused to pay Plaintiffs' claims under the Policy related to damages sustained during the Notice of Claim process in mitigation of the alleged damage at the Project and resulting losses.

40. Interstate also has an obligation to investigate claims before denying coverage.

41. Interstate failed to reasonably investigate the facts giving rise to Plaintiffs' claims for coverage.

42. Interstate has committed unfair claims settlement practices under C.R.S. § 10-3-1104(H)(I) by misrepresenting pertinent facts or insurance policy provisions relating to the coverage at issue.

43. Interstate's failures constitute unfair claim settlement practices under C.R.S. § 10-3-1104(h)(III) in that Interstate did not follow reasonable standards for the prompt investigation of claims arising under the Policy.

44. Interstate's failures constitute unfair claim settlement practices under C.R.S. § 10-3-1104(h)(IV) in that Interstate refused to provide coverage without conducting a reasonable investigation based upon all available information.

45. Interstate's failures constitute unfair claim settlement practices under C.R.S. § 10-3-1104(h)(VI) in that it has not attempted in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

46. Interstate has committed unfair claims settlement practices under C.R.S. § 10-3-1115(1)(a) by unreasonably delaying and denying payment of a claim for benefits owed to the Plaintiffs.

47. Interstate's conduct, as described herein and in the attachments hereto was unreasonable and/or in reckless disregard for the fact that no reasonable basis existed for its actions.

48. Interstate's denial of coverage to the Observatory Parties was unreasonable and/or in reckless disregard for the fact that no reasonable basis existed for its denial.

49. Interstate's denial of coverage to the Observatory Parties has no reasonable basis, in that none of the exclusions in the Policy apply.

50. Interstate's denial of coverage to the Observatory Parties constitutes a breach of the common law duty of good faith and fair dealing as codified in C.R.S. § 10-3-1113(1).

51. Interstate's denial of coverage to it's the Observatory Parties constitutes a willful and wanton breach of the Policy.

52. As a result of Interstate's bad faith and willful and wanton breach of the Policy, resulting in part from the handling and investigation of Plaintiffs' claims under the Policy, the Observatory Parties have been damaged in an amount to be proven at trial, including, but not limited to, their attorneys' fees incurred in the Notice of Claim process as well as in pursuit and

prosecution of their claims against Interstate. Plaintiffs may also be entitled to recover attorneys' fees in this case pursuant to C.R.S. § 10-3-1116(1).

### THIRD COUNTERCLAIM
### Declaratory Relief

53. The Observatory Parties hereby incorporate all previous allegations as though fully set forth herein.

54. Shaw agreed, pursuant to the Contract, to defend, indemnify and save Observatory Place harmless against all claims for damage to persons and property growing out of the execution of the Work, including any costs and fees incurred by Observatory Place, should any claims be made.

55. On or about April 17, 2006, Interstate issued a policy (the "Policy") to Observatory Place further identifying Plaintiffs Anderson and McCoy as insureds as members of the LLC.

56. Through the Policy, Interstate is both the intended and actual guarantor of Shaw's foregoing defense and indemnity obligations to Observatory Place. In this regard, the Contract is an "insured contract" under the Policy.

57. The Observatory Parties sent timely notice of the Notice of Claim process (as well as timely notice of the Complaint), and made demand for defense and indemnification for the investigative and legal fees and costs incurred during that process, as well as damages sustained at the Project and resulting losses.

58. Under the terms and provisions of the Policy, there is coverage for the claimed investigative and legal fees and costs incurred during the Notice of Claim process, as well as for the damages sustained at the Project and resulting losses.

10

59. None of the exclusions in the Policy apply.

60. Because Interstate has refused the Observatory Parties' claims for investigative and legal fees and costs incurred during the Notice of Claim process, as well as its claims for damages sustained at the Project and resulting losses, there is an actual controversy relating to the legal rights and duties of the parties to this action.

61. All parties who have any interest that would be affected by the declaration are parties to this action. Accordingly, the declaration shall not prejudice the rights of any person who is not a party.

62. The Observatory Parties hereby seek a declaration pursuant to 28 U.S.C. § 2201 and F.R.C.P. 57 as to the extent of Interstate's obligation to defend and indemnify the Insureds under the terms and conditions of the Policy.

63. Further, the Observatory Parties seek a declaration pursuant to 28 U.S.C. § 2201 and F.R.C.P. 57 as to the extent of Interstate's obligation to defend and indemnify the Insureds under the terms and conditions of C.R.S. § 13-20-808. *See* **Exhibit 7**, attached hereto and incorporated by this reference.

64. In addition, the Insureds seek a declaration pursuant to 28 U.S.C. § 2201 and F.R.C.P. 57 as to the applicability of C.R.S. §§ 10-3-1115 and 10-3-1116, due to Interstate's continuing unreasonable denial of coverage. *See* **Exhibit 8**, attached hereto and incorporated by this reference.

**WHEREFORE**, the Observatory Parties respectfully pray for judgment in their favor and against Interstate on their claims for declaratory judgment, breach of contract, and bad faith and willful and wanton breach of insurance contract. The Observatory Parties further request

that the Court enter judgment against Interstate for damages in the amount of: (1) the investigative and legal fees and costs incurred during the Notice of Claim process; (2) the Settlement amount paid to the Homeowner by the Observatory Parties to resolve the Litigation; (3) the attorneys' fees and costs incurred by the Observatory Parties in pursuing coverage prior to the instigation of this action; (4) the attorneys' fees and costs incurred by the Observatory Parties in this litigation; (4) pre-and post-judgment interest, and (5) for such other and further relief as this Court deems just and proper.

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL IN THIS MATTER OF ALL ISSUES SO TRIABLE.**

Respectfully submitted this 5th day of October, 2010.

*s/ Judy B. Snyder*
_____
Judy B. Snyder
**BERG HILL GREENLEAF & RUSCITTI LLP**
1712 Pearl Street
Boulder, CO  80302
Phone:  (303) 402-1600
Fax:  (303) 402-1601
Email:  jbs@bhgrlaw.com

*Attorneys for Plaintiffs*

Plaintiffs' Addresses:
Observatory Place LLC
P.O. Box 102244
Denver, CO 80250

Mr. Allen J. Anderson
2200 S. University Blvd., #506
Denver, CO 80210

Mr. Daniel P. McCoy
2501 East Kentucky Avenue
 Denver, CO 80209

12